# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Statesboro Division

|  |  |
|---|---|
| In re:<br><br>KENNETH R. PIERCE,<br><br>        *Debtor.*<br>_____<br><br>KENNETH R. PIERCE,<br><br>        *Movant,*<br><br>v.<br><br>FARM BUREAU BANK,<br><br>        *Respondent.* | **FILED**<br>**Lucinda B. Rauback, Clerk**<br>**United States Bankruptcy Court**<br>**Savannah, Georgia**<br>*By DReese at 4:17 pm, Feb 01, 2018*<br><br>Chapter 12<br><br>Number <u>17-60154-EJC</u> |

## OPINION ON DEBTOR'S OBJECTION TO CLAIM OF FARM BUREAU BANK

When Farm Bureau Bank loaned $18,000.00 to Kenneth R. Pierce (the "Debtor") to finance the purchase of a fertilizer spreader for his farm, the parties entered into a security agreement granting Farm Bureau Bank a security interest in the fertilizer spreader (Claim 7-1, Part 2, pp. 1-2). A security agreement is a contract that sets forth the terms agreed upon by the debtor and the secured party. *Kubota Tractor Corp. v. Citizens & Southern Nat. Bank*, 198 Ga. App. 830, 834 (1991). Subsequently, Farm Bureau Bank filed

a UCC-1 financing statement (the "Financing Statement") with the Clerk of Superior Court for Barrow County, Georgia. (Claim 7-1, Part 2, p. 5). Unlike a security agreement, a financing statement is "designed to notify third parties (generally prospective buyers or lenders) that there may be an enforceable security interest in the property of the debtor." *Kubota*, 198 Ga. App. at 834 (quoting *Villa v. Alvarado State Bank*, 611 S.W.2d 483, 486 (Tex. Civ. App. 1981)).

Under Georgia law, a financing statement must meet certain requirements to perfect a security interest in the debtor's collateral. O.C.G.A. § 11-9-502(a). One of these requirements is that the financing statement provide the debtor's name. O.C.G.A. § 11-9-502(a)(1). This requirement "is particularly important" because "[f]inancing statements are indexed under the name of the debtor, and those who wish to find financing statements search for them under the debtor's name." U.C.C. § 11-9-503, Comment 2 (Am. Law. Inst. & Unif. Law Comm'n 2010).

This case is before the Court on the Debtor's Objection to Farm Bureau Bank's Claim (the "Claim Objection"). (Dckt. 90). The Debtor contends that Farm Bureau Bank failed to provide the Debtor's correct name on its Financing Statement, in violation of O.C.G.A. § 11-9-503(a)(4), and therefore Farm Bureau Bank's claim is wholly unsecured. After careful consideration of the arguments of counsel, evidence submitted, and applicable law, the Court issues the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a), made applicable by Federal Rule of Bankruptcy Procedure 9014(c). For the reasons set forth below, the Court will sustain the Debtor's objection.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

## II. FINDINGS OF FACT

On June 18, 2015, Farm Bureau Bank financed the Debtor's purchase of the fertilizer spreader. On June 23, 2015, Farm Bureau Bank filed a Financing Statement with the Clerk of Superior Court for Barrow County, Georgia. (Claim 7-1, Part 2, p. 5). The Financing Statement listed the Debtor's name as "Kenneth Pierce." *Id.* The Debtor's current Georgia driver's license, issued on November 20, 2015 and valid through November 27, 2023, identifies the Debtor as "Kenneth Ray Pierce." (Dckt. 149, pp. 8-9). The Debtor *signed* his driver's license as "Kenneth Pierce." *Id.* at p. 9. According to the Debtor's undisputed testimony, his previous driver's license, which was in effect at the time the Financing Statement was filed, was also in the name of "Kenneth Ray Pierce." *Id.* The Debtor further testified that his previous driver's license would have been signed by him as either "Kenneth Ray Pierce" *or* "Kenneth Pierce."[1] *Id.* at p. 10.

On April 3, 2017, the Debtor filed this Chapter 12 case. (Dckt. 1). On May 5,

---

[1] The Debtor primarily goes by the name "Ken Pierce." (Dckt. 149, p. 11). He testified that "everybody knows [that] Kenneth, Kenneth Ray, Kenneth Pierce, [and] Ken Pierce" are "all the same person." *Id.* at 12.

2017, Farm Bureau Bank timely filed a proof of claim in the amount of $14,459.81 and attached the Financing Statement. (Claim 7-1, Part 2, p. 5). On August 22, 2017, the Debtor filed the instant Claim Objection. (Dckt. 90). The Debtor contends that because Farm Bureau Bank failed to correctly identify the Debtor as "Kenneth Ray Pierce" on its Financing Statement, its security interest is unperfected, and its claim is wholly unsecured. At a hearing on the Debtor's Claim Objection held on September 19, 2017, the Court heard testimony from the Debtor.

## III. CONCLUSIONS OF LAW

A. The Chapter 12 Debtor Has Standing to Use Chapter 5 Avoidance Powers

Before turning to the merits of the Debtor's Claim Objection, the Court must address the Debtor's standing. By seeking an order finding that Farm Bureau Bank's security interest is unperfected, and therefore that its claim is unsecured, the Debtor is essentially proceeding under the Bankruptcy Code's strong-arm clause of 11 U.S.C. § 544. Under § 544, the trustee has the rights of a hypothetical judicial lien creditor and is authorized to avoid unperfected security interests. *In re Jim Ross Tires, Inc.*, 379 B.R. 670, 674-75 (Bankr. S.D. Tex. 2007).

"[T]he clear and unambiguous language of § 544 confers avoidance powers upon the trustee, not the debtor." *In re Hansen*, 332 B.R. 8, 12 (B.A.P. 10th Cir. 2005). In Chapter 12, however, § 1203 provides that "a debtor in possession shall have all the rights . . . and powers . . . of a trustee serving in a case under chapter 11. . . ." 11 U.S.C. § 1203. Courts have interpreted this provision as authorizing Chapter 12 debtors to exercise the

trustee's avoidance powers under Chapter 5. *See Hansen*, 332 B.R. at 12 n.17; *In re Cohen*, 305 B.R. 886 (B.A.P. 9th Cir. 2004); *In re Holcombe*, 284 B.R. 141, 142-43 (Bankr. N.D. Ala. 2001). Accordingly, the Debtor in this Chapter 12 case has standing to bring this § 544 action.[2] If Farm Bureau Bank's security interest has not been properly perfected, the secured status of the claim may be challenged, and the claim will be unsecured only. *See Medcorp. Inc. v. Huntington Nat'l Bank (In re Medcorp. Inc.)*, 472 B.R. 444, 450 (Bankr. N.D. Ohio 2012) ("For purposes of § 544(a)(1) . . . a creditor holding an unperfected, or improperly perfected[,] lien against a debtor when a bankruptcy case is filed may be subject to having their lien avoided by the trustee.").

B. The Financing Statement Does Not Provide the Name of the Debtor

To determine whether Farm Bureau Bank's Financing Statement provides the name of the Debtor, the Court must consider several interlocking provisions of the Uniform Commercial Code (the "UCC") as adopted by the State of Georgia and codified in the

---

[2] This action should have been brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2). *See In re Rivera*, BAP No. NC-13-1615-KuPaJu, 2014 WL 6675693 (B.A.P. 9th Cir. 2014) (unpublished decision) ("Except when the debtor seeks to avoid a lien or other interest in exempt property under § 522(f), all other bankruptcy court actions challenging a creditor's secured status must be brought as an adversary proceeding to determine the validity, priority or extent of the creditor's lien."); *Matter of Beard*, 112 B.R. 951, 955 (Bankr. N.D. Ind. 1990) (direct attack on lien requires adversary proceeding). However, neither party raised this objection. As this is essentially an issue of law, neither party was helped or hindered by the form of the proceeding. *See In re Highland Constr. Mgmt. Serv., Inc.*, No. 11-11413-RGM, 2013 WL 1336918, at *5 n.7 (Bankr. E.D. Va. March 29, 2013), *vacated on other grounds*, 497 B.R. 829 (Bankr. E.D. Va. 2013). Indeed, in this case the Debtor filed the Claim Objection, Farm Bureau Bank filed a response, and then an evidentiary hearing was held, after which briefs were submitted. Thus, the parties essentially followed the same procedure afforded by an adversary proceeding. *See In re Copper King Inn, Inc.*, 918 F.2d 1404, 1406-07 (9th Cir. 1990). Accordingly, neither party was prejudiced by the Debtor's filing of a claim objection rather than an adversary proceeding.

Official Code of Georgia Annotated (the "O.C.G.A." or "Georgia Code"). The Court will first review the history and purpose of the UCC, which began in 1942 as a joint project of The American Law Institute and the National Conference of Commissioners on Uniform State Laws. U.C.C. General Comment. The drafters of the UCC sought to establish uniform rules governing commercial transactions throughout all American jurisdictions. *Id.* The UCC was first published in 1952. *Id.* Today, "[t]he U.C.C. has been adopted in some form by all jurisdictions and embodies the major corpus of American commercial law," and thus "commercial law is . . . uniform throughout the United States." Henry D. Gabriel, *The Revisions of the Uniform Commercial Code–Process and Politics*, 19 J.L. & Com. 125, 130 (1999). Georgia adopted the UCC in 1962. 1962 Ga. Laws 156.

Article 9 of the UCC, codified at Title 11, Article 9 of the Georgia Code, governs secured transactions, in which a debtor grants a creditor a security interest in personal property as collateral to secure a debt, making the creditor a secured party. O.C.G.A. § 11-9-109. Three conditions must be met before a security interest is enforceable against anyone. First, unless the secured party possesses the collateral, there must be a written security agreement signed by the debtor and containing a description of the collateral. Second, the secured party must have given value to the debtor. And third, the debtor must have "rights in the collateral." O.C.G.A. 11-9-203(b). If all three conditions are met, the secured party's security interest has been properly "attached" to the collateral. In this case, it is undisputed that Farm Bureau Bank's security interest attached to the fertilizer spreader. Instead, the parties dispute whether Farm Bureau Bank's security interest was *perfected.*

Although attachment gives a secured party rights in the collateral enforceable against the debtor, *perfection* gives the secured party rights against conflicting claims of third parties. Under the Georgia Code, the secured party must file a financing statement to perfect all security interests (subject to certain exceptions not applicable here). O.C.G.A. § 11-9-310(a). As to the sufficiency of a financing statement, the Georgia Code provides as follows:

(a) **Sufficiency of financing statement.** Subject to subsection (b) of this Code section, a financing statement is sufficient only if it:

(1) **Provides the name of the debtor;**

(2) Provides the name of the secured party or a representative of the secured party;

(3) Indicates the collateral covered by the financing statement; and

(4) Where both (A) the collateral described consists only of consumer goods as defined in paragraph (24) of subsection (a) of Code Section 11-9-102 and (B) the secured obligation is originally $5,000.00 or less, gives the maturity date of the secured obligation or specifies that such obligation is not subject to a maturity date.

O.C.G.A. § 11-9-502(a) (emphasis added). Of the requirement that a financing statement provide the debtor's name, the Georgia Code states as follows:

(a) **Sufficiency of debtor's name.** A financing statement sufficiently provides the name of the debtor:

(1) Except as otherwise provided in paragraph (3) of this subsection, if the debtor is a registered organization or the collateral is held in a trust that is a registered organization, only if the financing statement provides the name that is stated to be the registered organization's name on the public organic record most recently filed with or issued or enacted by the registered organization's jurisdiction of organization which purports to state, amend, or restate the registered organization's name;

(2) Subject to subsection (f) of this Code section, if the collateral is

being administered by the personal representative of a decedent, only if the financing statement provides, as the name of the debtor, the name of the decedent and, in a separate part of the financing statement, indicates that the collateral is being administered by a personal representative.

(3) If the collateral is held in a trust that is not a registered organization, only if the financing statement:

    (A) Provides, as the name of the debtor:

        (i) If the organic record of the trust specifies a name for the trust, the name specified; or
        (ii) If the organic record of the trust does not specify a name for the trust, the name of the settlor or testator; and

    (B) In a separate part of the financing statement:

        (i) If the name is provided in accordance with division (3)(A)(i) of this subsection, indicates that the collateral is held in a trust; or

        (ii) If the name is provided in accordance with division (3)(A)(ii) of this subsection, provides additional information sufficient to distinguish the trust from other trusts having one or more of the same settlors or the same testator and indicates that the collateral is held in a trust, unless the additional information so indicates;

(4) Subject to subsection (g) of this Code section, if the debtor is an individual to whom this state has issued a driver's license that has not expired, **only if the financing statement provides the name of the individual which is indicated on the driver's license** . . . .

O.C.G.A. § 11-9-503(a)(1)-(4) (emphasis added). Subsection (g) provides as follows:

    **(g) Multiple driver's licenses.** If this state has issued to an individual more than one driver's license of a kind described in paragraph (4) of subsection (a) of this Code section, the one that was issued most recently is the one to which such paragraph refers.

O.C.G.A. § 11-9-503(g).

In this case, Farm Bureau Bank's Financing Statement identifies the Debtor as Kenneth Pierce. The unexpired driver's license issued to the Debtor at the time the Financing Statement was filed identified him as Kenneth Ray Pierce. Accordingly, at first glance it appears that the Financing Statement did not sufficiently provide the name of the Debtor. But the inquiry does not end there. "A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." O.C.G.A. § 11-9-506(a).

Is the difference between the names "Kenneth Pierce" and "Kenneth Ray Pierce" a minor error, or is it seriously misleading? The Georgia Code answers that question. Generally, "a financing statement that fails sufficiently to provide the name of the debtor in accordance with [O.C.G.A. § 11-9-503(a)] is seriously misleading." O.C.G.A. § 11-9-506(b). The Debtor argues that Farm Bureau Bank's Financing Statement is seriously misleading because it fails to provide the name on his driver's license as required by O.C.G.A. § 11-9-503(a)(4). But as Farm Bureau Bank points out, there are *two names* "indicated on the driver's license": "Kenneth Ray Pierce" (typed) and "Kenneth Pierce" (signed). Farm Bureau Bank argues that O.C.G.A. § 11-9-503(a)(4) is not limited to the name typed on the driver's license, but rather that it *includes* the name signed by the Debtor, and thus its Financing Statement *does* provide the (signed) name of the Debtor.

To resolve this dispute, the Court must determine whether the phrase "indicated on the driver's license" refers only to the name typed on a driver's license by the

✎AO 72A
(Rev. 8/82)

Georgia Department of Driver Services or includes the name signed on a driver's license by the debtor. For the reasons explained below, the Court finds that the name "indicated on the driver's license" refers only to the name typed on the driver's license and *does not* include the name signed by the debtor.

O.C.G.A. § 11-9-503(a)(4) and related Georgia Code provisions are silent as to the meaning of the phrase "indicated on the driver's license." Turning to Webster's Third New International Dictionary 1150 (1981) the following are among the definitions provided for the word "indicate": "to point out or point to or toward with more or less exactness," to "show or make known with a fair degree of certainty," and to "reveal in a fairly clear way." These definitions do not help the Court determine which of two names is "indicated" on the Debtor's driver's license. Indeed, the presence of two different names on the driver's license is precisely the opposite of exactness, certainty, and clarity.

Although no Georgia case law directly addresses the narrow issue before the Court, two Georgia cases *do* demonstrate how a seemingly-minor error in the Debtor's name can render a financing statement seriously misleading. First, in *Receivables Purchasing Co., Inc. V. R & R Directional Drilling, LLC*, the secured party's financing statement incorrectly listed the debtor as "Net work Solutions, Inc." instead of "Network Solutions, Inc." 263 Ga. App. 649, 651-52 (2003). The Court of Appeals of Georgia affirmed the trial court's conclusion that the single space in "Net work" made the financing statement seriously misleading. *Id.* at 652. Second, in *Bus. Corp. v. Choi*, the financing statement at issue listed the debtor's name as "Gu, SangWoo," when in fact the debtor's name was "Sang Woo Gu."

280 Ga. App. 618, 619 (2006). As in *Receivables Purchasing Co.*, the Court of Appeals of Georgia again concluded that the financing statement was seriously misleading. *Id.* at 624.

Likewise, courts in other jurisdictions have judged financing statements seriously misleading based on errors in debtors' names. For example, in *Pankratz Implement Co. v. Citizens Nat'l Bank*, the debtor's name was "Rodger House," but the financing statement incorrectly identified him as "Roger House;" the Supreme Court of Kansas held that this misspelling made the financing statement seriously misleading. 281 Kan. 209, 211, 227 (2006). In *Clark v. Deer & Co. (In re Kinderknecht)*, the financing statement identified the debtor as "Terry J. Kinderknecht," instead of his legal name, "Terrance Joseph Kinderknecht." 308 B.R. 71, 72 (B.A.P. 10th Cir. 2004). The Bankruptcy Appellate Panel for the Tenth Circuit Court of Appeals ruled that the financing statements were seriously misleading because they used the debtor's nickname. *Id.* at 76-77. In *In re Fuell*, the bankruptcy court held that a financing statement misspelling the debtor's name as "Andrew Fuel" instead of "Andrew Fuell" was seriously misleading. No. 06-40550, 2007 WL 4404643, at *1-4 (Bankr. D. Idaho Dec. 13, 2007).

Although none of the aforementioned cases resolve the issue before this Court, one bankruptcy case provides some guidance. In *Genoa Nat'l Bank v. Southwest Implement, Inc. (In re Borden)*, the debtor was identified by his legal name "Michael Ray Borden" or by "Michael R. Borden" on his driver's license and on other legal documents. 353 B.R. 886, 887-88 (Bankr. D. Neb. 2006). However, the debtor often signed legal documents by his nickname, "Mike Borden." *Id.* The court held that financing statements identifying the debtor

as "Mike Borden" were seriously misleading. *Id.* at 892. *In re Borden* suggests that the name typed on legal documents trumps the name signed by the debtor. Nevertheless, this case was decided before the 2010 Amendments to the UCC, which the Court will discuss below, and the facts leave unclear whether the debtor's driver's license featured two different names, as in the case currently before the Court.

Because no case law defines the phrase "indicated on the driver's license," the Court turns for additional guidance to the 2010 Amendments to UCC Article 9, which the State of Georgia adopted in relevant part in 2013. 2013 Ga. Laws 223. The requirement that a financing statement provide the debtor's name "indicated on the driver's license" originated with the 2010 Amendments. Previously, UCC Article 9 required that "if the debtor has a name," a financing statement sufficiently provides the name of the debtor "only if it provides the individual or organizational name of the debtor." U.C.C. § 9-503(a)(4)(A) (1998). The majority of cases interpreting this provision held that the term "individual name" referred to the debtor's legal name. *See In re Green*, No. 7-05-16399 TR, 2012 WL 5550767, at *3 (Bankr. D.N.M. Nov. 14, 2012) (financing statement filed under nickname "Ron Green" instead of legal name "Ronnie Jackie Green" was seriously misleading"). *See also In re Kinderknecht*, 308 B.R. at 75-77.

The 2010 Amendments to UCC Article 9 replaced the "individual name" language with two alternative approaches to naming individual debtors. These alternatives, referred to in the UCC as Alternative A and Alternative B, are as follows:

(a) [Sufficiency of debtor's name.]

A financing statement sufficiently provides the name of the debtor:

. . .

**[Alternative A]**

(4) subject to subsection (g), if the debtor is an individual to whom this State has issued a [driver's license] that has not expired, only if the financing statement provides the name of the individual which is **indicated on the [driver's license]**;

(5) if the debtor is an individual to whom paragraph (4) does not apply, only if the financing statement provides the individual name of the debtor or the surname and first personal name of the debtor . . . .

. . .

**[Alternative B]**

(4) if the debtor is an individual, only if the financing statement:

    (A) provides the individual name of the debtor;

    (B) provides the surname and first personal name of the debtor; **or**

    (C) subject to subsection (g), provides the name of the individual which is **indicated on a [driver's license]** that this State has issued to the individual and which has not expired . . . .

U.C.C. § 9-503(a)(4)(A) (2010) (emphasis added). Commentators have referred to Alternative A and Alternative B as the "only if" approach and the "safe harbor" approach, respectively. *See* Austin Morris, *The 2010 Amendments to U.C.C. § 9-503: Sufficiency of An Individual Debtor's Name*, 4 Elon L. Rev. 115, 136 (2012). Under Alternative A, the "only if" approach, if an individual debtor holds an unexpired in-state driver's license, the financing statement is sufficient "only if" it provides the debtor's name as indicated on the driver's license. Alternative B, the "safe harbor" approach, sets forth three separate ways to identify an individual debtor: (1) by providing the debtor's individual name; (2) by providing

the debtor's surname and first personal name; or (3) by providing the name indicated on the debtor's unexpired in-state driver's license. The State of Georgia has adopted Alternative A, the "only if" approach. O.C.G.A. § 11-9-503(a)(4).

The primary goal of the 2010 Amendments was to provide greater clarity as to the name of an individual debtor for purposes of filing a financing statement. *See* Morris, *supra*, at 131. The "only if" approach of Alternative A facilitates this goal by establishing a bright line rule: that a financing statement must contain the debtor's name as indicated on the debtor's driver's license. Alternative A "resolve[s] dilemmas over which government document contains the debtor's legal name for filing purposes," "eliminates concerns over individual debtors' use of potentially misleading nicknames," and "goes a long way toward giving filers a clue as to the correct configuration of names which are culturally unfamiliar." Morris, *supra*, at 137. Thus, "Alternative A cures much of the uncertainty that had developed" before the 2010 Amendments. *Id.* In contrast, Alternative B, which provides three ways to identify the debtor, "keeps alive the confusion" and "detract[s] from the standardization and jurisdictional uniformity that the Uniform Commercial Code otherwise promotes." *Id.*

The State of Georgia has adopted Alternative A, the "only if" approach. O.C.G.A. § 11-9-503(a)(4). This decision indicates that the Georgia General Assembly preferred the certainty of Alternative A over the confusion of Alternative B. Interpreting the phrase "indicated on the driver's license" as *including* the name signed by the debtor would effectively provide two equally sufficient ways of identifying the debtor: the typed name and

the signed name. The legislature's preference for certainty would thus be thwarted.[3] In

contrast, limiting the meaning of "indicated on the driver's license" to the debtor's *printed*

name ensures simplicity and predictability, consistent with the UCC drafters' Official

Comment 2 to § 9-503:

> [D]etermination of a debtor's name in the context of the Article 9 filing system must take into account the needs of both filers and searchers. Filers need a simple and predictable system in which they can have a reasonable degree of confidence that, without undue burden, they can determine a name that will be sufficient so as to permit their financing statement to be effective. Likewise, searchers need a simple and predictable system in which they can have a reasonable degree of confidence that, without undue burden, they will discover all financing statements pertaining to the debtor in question.

U.C.C. § 11-9-503, Comment 2 (Am. Law. Inst. & Unif. Law Comm'n 2010).

Further support for finding as seriously misleading the name "Kenneth Pierce"

listed on Farm Bureau Bank's Financing Statement comes from the standard Georgia UCC-1

Financing Statement form available on the Georgia Superior Court Clerk's Cooperative

Authority's website. *See* https://www.gsccca.org/docs/ucc-documents/ucc1.pdf?sfvrsn=4.

The form instructs the secured party to provide the debtor's "exact, full name" and not to

"omit, modify or abbreviate any part of the Debtor's name." The same language appears on

the Financing Statement filed by Farm Bureau Bank in this case. (Dckt. 116-1, p. 5). Had

Farm Bureau Bank followed this instruction, it would have identified the Debtor as "Kenneth

Ray Pierce," his exact, full name. This is the same as the typed name on the Debtor's driver's

license. "Kenneth Pierce," the Debtor's signed name, was not his exact, full name.

---

[3] The Court also notes that signatures are often illegible. It would be nonsensical to attempt to decipher a debtor's signature when the typed name is readily available *on the same document*.

For the reasons set forth above, the Court finds that Farm Bureau Bank failed to provide in its Financing Statement the name indicated on the Debtor's driver's license, "Kenneth Ray Pierce," as required by O.C.G.A. § 11-9-503(a)(4). Therefore, Farm Bureau Bank's Financing Statement is seriously misleading under O.C.G.A. § 11-9-506(b).

C. Farm Bureau Bank Fails to Carry its Burden as to the Safe Harbor Provision

Farm Bureau Bank has one final argument: that under Georgia Code's safe harbor provision, its Financing Statement is not seriously misleading. This safe harbor provision, set forth in O.C.G.A. § 11-9-506(c), states as follows:

> (c) *Financing statement not seriously misleading.* If a search of the records of the filing office under **the debtor's correct name**, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with [O.C.G.A. § 11-9-503(a)], the name provided does **not** make the financing statement seriously misleading.

O.C.G.A. § 11-9-506(c) (emphasis added).

A secured party may file a financing statement in "[t]he office of the clerk of the superior court of any county" in Georgia. O.C.G.A. § 11-9-501(a)(2). The Georgia Superior Court Clerks' Cooperative Authority has established a website on which financing statements may be filed electronically. *See* https://www.gsccca.org/. The website explains that its standard search logic is "optimized to return relevant results even when the search criteria do not exactly match the records available in the database" and that the searches "normalize the information that is being supplied by the searching party such that when the criteria is applied to the records in the UCC database, matches can be correctly identified despite small differences in the way the data was originally supplied on the UCC document."

*See* http://search.gsccca.org/UCC_Search/files/UCC_Search_Logic.pdf.

Before considering whether a search under the Debtor's "correct name" would disclose Farm Bureau Bank's Financing Statement, and thus whether Farm Bureau Bank is protected by the safe harbor provision, the Court must determine the meaning of the term "correct name." Unfortunately, O.C.G.A. § 11-9-506(c) does not define this term.[4] It appears that the only case addressing this issue is *In re Nay*, 563 B.R. 535, 538 (Bankr. S.D. Ind. 2017) (financing statement identifying debtor as "Ronald Mark Nay" instead of correct name "Ronald Markt Nay" was seriously misleading). There, the bankruptcy court held that under the Indiana Code's equivalent of O.C.G.A. § 11-9-506(c), "the 'only' correct name of the Debtor under section 503 is the name on his [] driver's license . . . ." *Id.* at 539. "Reading section 503 together with section 506, it seems clear that . . . section 506 provides relief to [the secured party] only inasmuch as a search of the debtor's 'correct' name (as established by section 503), using standardized search logic, would reveal its financing statement." *Id.* The Court adopts the reasoning of *In re Nay*. Accordingly, the Debtor's correct name for purposes of O.C.G.A. § 11-9-506(c) is the same name indicated on his driver's license: "Kenneth Ray Pierce."

Farm Bureau Bank contends that the standard search logic employed by the Georgia Superior Court Clerks' Cooperative Authority discloses its Financing Statement. However, Farm Bureau Bank's exhibits only reflect searches under the name "Kenneth

---

[4] O.C.G.A. § 11-9-506(d) states that for purposes of O.C.G.A. § 11-9-508 (effectiveness of financing statement if new debtor becomes bound by security agreement), the term "debtor's correct name" means "the correct name of the new debtor." O.C.G.A. § 11-9-506(d). This provision does not apply in this case.

Pierce," which is not the Debtor's correct name. (Dckt. 116-2, pp. 1-3). The Debtor, on the other hand, provides uncontradicted exhibits showing that a search under his correct name, "Kenneth Ray Pierce," does not disclose the Financing Statement. (Dckt. 118-1, Exhibits A-B). Accordingly, Farm Bureau Bank has failed to carry its burden of proof on this safe harbor defense.

Farm Bureau Bank relies on the case of *Planned Furniture Promotions, Inc. v. Benjamin S. Youngblood, Inc.* for the proposition that a financing statement is only seriously misleading under O.C.G.A. § 11-9-506(c)'s safe harbor provision where the names of the debtors are "completely dissimilar." 374 F.Supp.2d 1227, 1238-39 (M.D. Ga. 2005) (Fitzpatrick, J.). In *Youngblood*, the district court held that a financing statement listing the debtor as "Benjamin Scott Youngblood" instead of "Benjamin S. Youngblood, Inc." was not seriously misleading based only on the *assumption* that "[a] search of the filing records under the name 'Benjamin S. Youngblood, Inc.' *would almost assuredly* turn up a financing statement filed under the name Benjamin Scott Youngblood," and thus a "diligent creditor" would be put on notice of the pre-existing security interest. *Id.* at 1237-39 (emphasis added). *Youngblood* has therefore been criticized on grounds that it "essentially ignores the provisions of the Georgia UCC referring to the filing office's standard search logic and appears to rest on pre-revised Article 9 law dealing with the diligent searcher standard." *In re Tyringham Holdings, Inc.*, 354 B.R. 363, 367-68 (Bankr. E.D. Va. 2006). The Court agrees with the analysis of *In re Tyringham Holdings, Inc.*, and thus *Youngblood* cannot rescue Farm Bureau Bank's Financing Statement from being seriously misleading. A

AO 72A
(Rev. 8/82)

separate Order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia, this 1st day of February, 2018.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia